515 So.2d 1263 (1987)
Sheryl L. BENTON
v.
STATE of Alabama DEPARTMENT OF HUMAN RESOURCES.
(In the Matter of Tonya Jo BENTON and Denise Earline Benton, minors).
Civ. 5849.
Court of Civil Appeals of Alabama.
October 7, 1987.
*1264 Thomas D. Motley, Dothan, for appellant.
William Prendergast, Coleman Campbell and Jim L. Mysinger, Asst. Attys. Gen., for appellee.
INGRAM, Judge.
Following an ore tenus hearing, the district court of Houston County ordered the permanent termination of all parental rights of the mother in Tonya Jo and Denise Earline Benton, ages eleven and ten, respectively. The parental rights of the legal and putative fathers of the children have previously been terminated. Permanent legal custody of the children was vested in the Alabama Department of Human Resources (Department). The mother appeals.
The dispositive issue on appeal is whether there exists clear and convincing evidence which supports the trial court's decision to terminate the mother's parental rights.
It is well settled that a parent has a prima facie right to custody of a child. However, the overriding consideration is always the best interests of the child. McCullough v. Alabama Dept. of Pensions & Security, 500 So.2d 1093 (Ala.Civ. App.1986). In determining the child's best interests, the court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for the child. Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App.1984). The parental rights of the parents can then be terminated if the court finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the child. Ala.Code 1975, § 26-18-7(a).
Additionally, we note that the determination made by the trial court following an ore tenus hearing is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. In the Matter of Moore, 470 So.2d 1269 (Ala.Civ. App.1985).
The record reveals, in pertinent part, that the Department has been involved with the mother since 1973 and that the children have been in the Department's temporary custody since 1985 due to neglect and emotional abuse. Prior to and subsequent to the children's being placed in foster care, the Department has been active in helping the mother towards self-rehabilitation. The Department has provided protective services, homemaker services, day care services, financial assistance, mental health counseling, and Parents Anonymous. Further, the Department has provided written plans of responsibility so that the mother could achieve mutual goals. However, the record indicates that, despite the intensive counseling, the mother has been unable to consistently provide for the physical and emotional needs of the children. Additionally, the mother has been unable to manage a regular job or to establish a stable home as required by the agreements.
A psychological evaluation of the mother revealed that she suffered from mixed symptoms of anxiety and depression, as well as mixed personality disorders with psychopathic tendencies. The evidence further reveals that the mother loses her temper and has at times called her children "vulgar" names. At one point, the record reveals that the mother threatened that she would shoot her therapist if her parental rights were terminated.
Under Ala.Code 1975, § 26-18-7(a)(6), there are several factors which the court shall consider, but to which it is not limited, in determining whether or not parents are unable or unwilling to discharge their responsibilities to and for the child. One of these factors is that reasonable efforts by the Department leading toward the rehabilitation of parents have failed. Here, the *1265 record is clear that the Department worked with the mother in an effort for her to regain custody of her children. As noted above, extensive counseling has been provided to the mother. However, the record reveals that attempts to rehabilitate the mother have failed and that her lifestyle remains one of instability and conflict.
The record is also clear that the Department sought less drastic alternatives than termination of the mother's rights. The evidence reveals that foster care, therapy, and social services were all provided as an initial alternative to termination of parental rights. Likewise, extensive support was provided through services and mental health counseling, with little success. Additionally, the court continued the case on several occasions in order to allow the mother more time to adjust her circumstances to meet the needs of her children. The children's legal and putative fathers have not shown any interest, and all their parental rights in the children have been previously terminated.
In view of the above, there was clear and convincing evidence that termination of the mother's parental rights would be in the children's best interests. McCullough, supra.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.